Case. Eighty Four Mining Company v. Director, Office of Workers' Compensation Programs. Good morning. Good morning. Is it Mr. Colleen? Yes, my name is Norman Colleen. I represent the appellant. Just give us one second for everybody to get settled. Thank you, Mr. Colleen. If it pleases the Court, the issue raised in this case is whether a denial of benefits in a state occupational disease claim, which discredits a diagnosis of pneumoconiosis, resets the three-year statute of limitations clock for an initial claim to be filed under the Federal Black Runts Benefit Act. The Administrative Law Judge and the Benefits Review Board each held, for different reasons in this case, that the claimant's unsuccessful litigation of a state occupational disease act claim relieves claimant of the obligation to file a federal black claim within the statutory time frame of three years after receiving a medical determination that he was totally disabled due to pneumoconiosis. Why isn't O. Bush controlling here? There we said we are persuaded by the analysis of the courts, Fourth Circuit, Sixth Circuit, Tenth Circuit, the analysis of these courts of appeals and agree with the Board's conclusion that the statute of limitations does not bar O. Bush's 2006 claim. For the overarching reason that O. Bush and all those cases cited involved a subsequent claim for benefits under the Federal Black Lung Benefits Act, whereas this case involves an initial claim for benefits under the Black Lung Benefits Act. Why does that matter? Why does the reasoning of those cases matter? The effect of the initial claim filed by the claimant. In those cases, the claimant did what he was supposed to do when he received his diagnosis of total disability due to pneumoconiosis. They filed a claim. That claim was litigated and the diagnosis was discredited. Afterwards, that same claim also under the Federal Black Lung Benefits Act. The court, O. Bush, saw a real incongruity in that situation when the defendant said, wait a minute, you can't file your subsequent claim because you received an opinion more than three years ago that you had pneumoconiosis and it totally disabled you. He did have a workers' comp claim, right? In this case? Yes. He had that claim and that's where you contended that that diagnosis was wrong, was misdiagnosed, and it was so held that it was wrong. And then later, he filed under black lung. So, I mean, they're factually similar. I don't get the distinction here. The difference is that in this case, there's no interplay between the workers' compensation judge's decision and the Federal Black Lung case. But why do you think those courts would have come out differently in this fact situation? I can't imagine that. Well, I do believe they would, Your Honor. Quoting directly from O. Bush, a restrictive interpretation of the statute of limitations would be in tension with the regulation that enables minors to file subsequent claims. The very fact that successive claims are permitted on evidence of material changes to the health of a minor makes an interpretation of the statute of limitations that effectively precludes such claims untenable. In other words, the court was concerned with a situation where you're giving with one hand and taking away with the other, where you, where the Federal Black Lungs Act allows you to file a subsequent claim based on a change of condition, and whereas the statute of limitations at the same time would prevent you from filing that claim more than three years after you filed your first claim. So you're saying in this case, is it important whether there's been a material change in the workers' comp claim was filed and then the Black Lung Act case was filed? Well, Judge, I do think that's important because that was the overriding reason for the decision in O. Bush. The court, you know, considered the unfairness of a situation where the Act allows you to file a subsequent claim if there is a change in condition, noting that pneumoconiosis is a progressive and latent disease, but you, at the same time, are precluded from filing that claim. So give us the reasoning, you know, kind of write the opinion for us that distinguishes this, that kind of guts the reasoning of the other courts of appeals. I'm just not sure how you do that. The factual situation in this claim is not the same situation at issue in O. Bush. But he was told in a proceeding that the diagnosis was wrong. Yes. Right. And then he was denied benefits because of that. Right. So that's correct. And that's exactly what happened in O. Bush and the other court of court cases. And that's the basis on which we held, you know, that we agreed with the other courts that that's kind of unfair. It's unfair if his subsequent claim is filed under the Federal Black Lung Benefit Act. If it's a state workers' compensation claim, there's no interplay between the two litigation. Why does it matter? Isn't the whole point that he's been told that he indeed does not have this disease officially through a proceeding? I don't believe that that is that is the situation, Your Honor. You know, in this in this case, he could have filed both of those claims simultaneously. He could have filed his federal black lung act immediately after receiving the determination. Would there have been any collateral estoppel effect to this? No, there isn't, Judge. And there's no collateral estoppel at all between the two. He could have maintained them simultaneously. And in the Federal Black Lung Act, the judge is not bound at all by what the workers' compensation judge has to say. Would you address the judicial estoppel, which is what the board ruled? Yeah, and interestingly, the board completely ignored the administrative law judge's decision in O. Bush. And I would note that that's probably because they didn't think that it applied in this case. We have no indication of that. We have no indication, but it's just curious that they did not address it at all. But it is a little bit curious that you can argue before the state ALJ that this diagnosis is a misdiagnosis and that the problems are attributable, the respiratory problems are attributable to smoking history, and then come before the black lung authorities and say that he should have filed within three years of that diagnosis. Well, Your Honor, that's not an inconsistent position at all, which you need to have in order to invoke judicial estoppel. I think that's a little bit of a misunderstanding of the statute of limitations, which, by the way, was addressed by the Sixth Circuit in the Briggins case, which is cited in the brief. They were called upon in that case to make a determination as to whether or not, under the Federal Black Lung Act, a medical determination needs to be well-reasoned and well-documented. The Briggins court said, well, no, you don't. All we care about with regard to the statute of limitations is whether it gives the claimant notice that he has a claim or not. The accuracy of the statute of limitations is not relevant at all. In fact, the defendant takes no position with regard to the accuracy of that medical determination. The only position the defendant takes is that it was made. And that's true in really all toxic tort cases, including asbestos cases, where the statute is a discovery-type rule based upon the claimants or plaintiffs receiving a medical opinion that they have the disease and that they now have a claim. In virtually all of those cases where the statute is invoked because the claim is filed late, the defendant still defends based upon the merits of the case, which the Briggins court noted. And they distinguish between a position taken on the statute and a position taken on the merits, which is the case here, and that was recognized by the dissenting opinion. But even in that opinion, the court would find where a first Black Lung Act claim was filed and denied that you'd get a clean slate for the statute of limitations on the second one. And I'll bring you back to the Briggins case, which kind of closely tracks this matter. In Briggins, the Fourth Circuit looked at a situation. I thought it was the Sixth Circuit. I'm sorry, the Sixth Circuit looked at a situation where the claimant filed a state claim and was granted benefits under the state claim. He received benefits for a number of years, after which time they were terminated. The reason for the termination never went into the record, so the court didn't know. In any event, the claimant argued that the state decision should have been characterized as a misdiagnosis because he was taken off benefits. The court disagreed and dismissed his claim. The first and foremost reason that they noted in dismissing the claimant's claim was that he filed his first case in state court and never filed in federal court. I'm sorry, never filed under the Federal Black Lung Act until some seven years afterward. And what they said was, well, he filed and maintained a state action, but he sat on his rights in the federal claim, which is exactly what the situation is in our case. Well, but they held that the misdiagnosis rule applies only if a minor's claim is ultimately rejected on the basis that he does not have the disease, and the record didn't reveal the reason for the termination. So it wasn't that he sat on his rights. It's that they didn't know that, and so it technically didn't apply. Well, I would disagree, Judge. I think the first reason that they cited was that he sat on his rights. They did talk about the misdiagnosis, and I think that was in just bringing up any host of different reasons that Dukes did not apply to that case. Did you reserve rebuttal time? I did not, Judge. Thank you. Thank you. May it please the Court. My name is Heath Long, and I represent the respondent and coal miner Charles Morris. I will be splitting my time with the solicitor. She will be arguing the issue of judicial estoppel. I will be arguing the issue of whether the minor's claim is timely under the O'Bush reasoning. As stated, this case involves a previous state claim, not a previous federal black lung filing. If it had been a previous federal black lung filing, there's no issue at all. Well, wait a second, though. I mean, there would have to be a change in condition, though. A material change in condition. That's correct, and that is part of whether or not a claim is valid, the second claim. The second claim. What about in this instance where you filed the first claim with the state workers' compensation? Is there evidence of a material change in condition from when you first sought workers' comp benefits to when you sought black lung benefits? Actually, there was a significant time difference. About five years? Yes. And what happened in that interim time period is not that Dr. Cohen's report was the first report. That was the report that he used for the state claim. He didn't use that Dr. Cohen's report to file his federal black lung claim five years later. He actually got sicker, and his testimony reveals that not only was he put on oxygen, he was put on oxygen 24-7 and became ill enough that his physicians gave him a report indicating that he had black lung, or co-workers' pneumoconiosis would be the medical term, and he sought other physicians, not Dr. Cohen's. So Dr. Cohen played no role in the filing for federal black lung. He only played a role in the state case. So, yes, there was a distinct difference in his condition and in the medical reports. Is your argument, your position that any diagnosis of black lung that's been discredited by any adjudicatory body is sufficient? Is that your position? Yes. Do you have any support for that? No. Actually, Your Honor, I think, and you wrote the O. Bush opinion, and I don't think it's a question of must an administrative law judge follow, because if it's a federal black lung filing, there's a change in condition, a refile, I think they must follow the O. Bush decision. But if it's a state claim and that report is gutted, so to speak, that the minor is told he does not have black lung, he is not disabled from coal dust exposure, then I believe the administrative law judge may use the same reasoning to discredit that. And here he does. And just for instance, and in this case, which makes it just a little bit worse, is while this man was working, and it's part of the record, he spent 19 years underground. And then you note from his testimony that he then moved above ground. He didn't move above ground because he had spent enough time. What happened was NIOSH, he became what was called a NIOSH, and in the coal fields they called them letter carriers because NIOSH brings a van to the coal mine, x-rays you, and if your x-ray is positive for coal workers pneumoconiosis, and NIOSH is a federally funded organization, they give you a letter. And you take the letter to your employer and it says you may move to a less dusty environment or area of the mine. So instead of in by, you move out by. And that's what happened here. So not only did this man have a NIOSH letter from 19 years, he then worked another 16 years in the coal mines, got Dr. Cohen's report. Dr. Cohen is a well-established doctor from Chicago, is an expert, speaks internationally on this subject, and then lost his case. So he was told black lung or coal worker pneumoconiosis is incurable and it can't be treated. So this man had the disease, was told twice he had the disease, filed a claim, saw another doctor who was a B Reader and Board Certified Pulmonologist, Dr. Geno, and told he did not, and then the judge agreed with that. And he relied upon that decision until he got sicker and until he sought different medical treatment. And, Judge, I think the overarching concept here is that the Federal Black Lung Act was written presuming that miners were either not sophisticated enough, because they lived in rural areas, they do not have advanced health care, sometimes they don't even have adequate legal resources, that they are to be protected. This is for the benefit and protection of miners. And the rules are broadly written so that all cases can be heard, and especially if someone suffers from a breathing disorder. And given that pneumoconiosis is latent and progressive, it might not be when they retire. It might not be five years after they retire. It might be several years after they retire. And so that's why that allowing to file duplicate claims is permitted in court. And if you don't have any other questions, thank you. Thank you very much, Mr. Long. Ms. Cox? Good morning. Helen Cox for the Director. Let me first address your O. Bush decision and why we don't think it controls here. Now, it definitely provides much instructive guidance. But O. Bush drew a bright line for subsequent claim to reconcile the correctness of a prior federal benefits decision with the miners' desire and need to pursue a subsequent claim without having those subsequent claims time-barred. The court held as a matter of law that a doctor's diagnosis of total disability due to pneumoconiosis that predates the denial of benefits is deemed a misdiagnosis. So in the federal system with the first claim, once a first claim is denied, a subsequent claim has to be supported by evidence since the denial of benefits. That earlier evidence is legally insufficient to make any support of a claim of benefits. So any determination that predates that federal denial, whether it's in the record or not, is a misdiagnosis for a federal, subsequent federal claim. The difference here is that the Pennsylvania state claim denial does not get race judicata effect in the federal program. And so for that reason, we don't believe that O. Bush controls to deem Dr. Cohen's report in this instance a misdiagnosis. But O. Bush didn't really rely upon the race judicata effect. He relied upon the reasoning of the other courts, which almost cried out for, you know, I only have three years. Well, it did rely on race judicata in the sense that it held as the other courts had held that the prior denial of benefits had to be accepted as correct. Whether or not another judge looking at it, you know, would reach the same conclusion or not, the determination of all these statute of limitation cases in the Blacklund program is the federal program that accepts that the final denial is correct. And, therefore, that is the base, that is the point from which a minor is looking out for any subsequent claims. And, therefore, you have to have that change of condition from the time of the denial of the prior claim. And that just doesn't hold true when you're comparing a state program to a federal program. However, the reasoning behind O. Bush supports what the board did here. Are you contending we should affirm the board based upon judicial estoppel? Yes. We think that the board reached a similar conclusion to O. Bush and that was consistent with O. Bush in finding that Dr. Cohen's opinion was a misdiagnosis. However, instead of being based as a matter of law, they found it based on 84 Mining's assertion and successful assertion at the state level that Dr. Cohen's diagnosis was wrong. But how is that inconsistent? You say, okay, Dr. Cohen's diagnosis was wrong. And then later you say, well, whether Dr. Cohen's opinion was right or wrong, the statute started to run. Why is that inconsistent? Because a misdiagnosis is deemed insufficient to trigger the running of the statute. And the only reason it's a misdiagnosis is because the state ALJ rejected it. Based on 84 Mining's- Right. So what if he had been successful in getting his workers' compensation benefits? 84 would have still contested the- would have taken the position that's inconsistent, would have said that is a misdiagnosis, but you would not now claim that the statute was told. No, no. If it were- if the miner had been successful- Right. No. And it's not- it's not that it's inconsistent within the same adjudication. I mean, clearly parties in all sorts of litigation argue a statute of limitations depends while making an alternative argument on the merits. Sure. But this is not the same judicial proceeding. It's the fact that he made- that 84 Mining made one position- asserted one position in the state claim, state adjudication, and now is inconsistently arguing that Dr. Cohen's report is not a misdiagnosis in the federal claim solely for the purpose of having that claim time-barred. No one is arguing that Dr. Cohen's report should be used to establish Mr. Morris's entitlement to benefits. Nobody is arguing that Mr. Morris is actually disabled back to 2006. His entitlement runs from 2011 because that's when the evidence that was credited establishes that he became totally disabled due to pneumoconiosis. But doesn't judicial estoppel also have to- we have to have some sense of citizens having acted in bad faith? And we really don't- it's not something where they're playing fast and loose with the court and trying to say it's something other than what they said before. Correct. It's not to that extreme extent of wrongdoing that bad faith invokes, but it is- they are in- they are playing fast and loose with the court and trying to prevent Mr. Morris's claim from going forward by arguing something the exact opposite of what they were arguing when the case was before the state adjudicator. And by presenting the two inconsistent- irreconcilably inconsistent positions on whether or not Dr. Cohen's report is a misdiagnosis, they've created that tension between two judicial forums and they should not be allowed to benefit from that. But you're characterizing- you're saying that their argument the second time around was that the original one was not a misdiagnosis, but really the argument was that the clock starts- should start running from his having received that determination. I see my time is up, but if I may. Yes, and if there had been no intervening state adjudication, there's no question that Dr. Cohen's report would have been sufficient to trigger the statute of limitations and it would have expired. However, the fact is there was the intervening state adjudication where 84 Mining argued that Dr. Cohen's report was a misdiagnosis. They succeeded at that. They had convinced the judge, they convinced Mr. Morris to accept that finding and not appeal, not proceed. And therefore, he did not file another claim or federal claim, his first federal claim, until he received additional evidence telling him his condition was now actually totally disabling due to pneumoconiosis. Thank you. Thank you. Thank you very much. Thanks, Ms. Cox. The case was well argued. We'll take it under advisement.